The **FIRST NATIONAL BANK OF BOSTON**, Trustee, Appellant,

v.

**CHAMPLIN PETROLEUM COMPANY**, Appellee.

No. 13–85–159–CV.

Court of Appeals of Texas, Corpus Christi.

March 20, 1986.

Rehearing Denied April 17, 1986.

Howard P. Newton, Matthews & Branscomb, San Antonio, for appellant.

J. Michael Mahaffey, Kleberg, Dyer, Redford & Weil, Corpus Christi, for appellee.

Before SEERDEN, UTTER and BENAVIDES, JJ.

OPINION

SEERDEN, Justice.

Appellant challenges a take-nothing judgment in a slantwell case tried to a jury. We affirm.

Appellant sued on behalf of a trust which distributes income from certain mineral interests in the Wardner Ranch. It alleged

that Champlin, through its predecessors, converted gas from the Wardner Ranch and breached contractual duties. Champlin's direct predecessor was Chicago Corp., which helped form Gulf Plains Corp. In May, 1941, Gulf Plains acquired 50% of the gas rights on the tract from which the deviated well was drilled. Gulf Plains hired a co-owner, Sam E. Wilson, Jr., to drill the well. The jury found that Gulf Plains became the alter ego of Chicago in May, 1948, at which time Chicago replaced Gulf Plains and Wilson as the operator of the well. Chicago dissolved Gulf Plains. In 1954, Chicago acquired Champlin Oil and Refining Co. and subsequently adopted the Champlin name.

Appellant has been trustee since approximately 1960. The well of which appellant complained produced gas from points under the Wardner Ranch between 1941 and 1946. Appellee pled limitations. A two-year limitation governed actions for conversion, and a four-year limitation applied to breach of contract claims. TEX. REV.CIV.STAT.ANN. art. 5526 and 5527 (Vernon Supp.1985).[1] However, appellant alleged that Champlin and its predecessors fraudulently concealed the deviation of the well, so that limitations had not expired when it filed suit in 1981. Appellant had the burden to prove any suspension of limitations, including fraudulent concealment. *Weaver v. Witt,* 561 S.W.2d 792, 793 and 794 (Tex.1977); *Dotson v. Alamo Funeral Home,* 577 S.W.2d 308, 311 (Tex.Civ.App.— San Antonio 1979, no writ).

By its answers to Special Issues 16, 17 and 18, the jury found that neither Gulf Plains nor Chicago nor Champlin fraudulently concealed that the well had produced gas from under the Wardner Ranch until two or four years before appellant filed suit. By its answers to Special Issues 19 and 20, the jury found that at least four years prior to its filing suit, appellant knew that the well had produced from the Wardner Ranch, or had knowledge or information of facts and circumstances which would have led a person exercising ordinary care to a discovery of such production. By its answers to Special Issues 21 and 22, the jury found that at least four years prior to its filing suit, appellant was in possession of information which would cause a reasonably prudent landowner similarly situated as appellant to make inquiry, which inquiry, if pursued with due diligence, would have disclosed that the well bottomed under the Wardner Ranch.

The trial court could have based its judgment on either the answers to the limitations issues (19–22) or the fraudulent concealment issues (16–18). We must affirm the judgment on any legal theory that finds support in the evidence. *Field Measurement Service, Inc. v. Ives,* 609 S.W.2d 615, 619 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.); *Godde v. Wood,* 509 S.W.2d 435, 444 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.).

Appellant's first three points of error attack the bar of limitations. Point one urges us to apply the discovery rule to the accrual of the causes of action. Point two complains that the court erred in submitting and in failing to disregard issues 19–22 because appellant established, as a matter of law, that it did not know, or, in the exercise of due diligence, have reason to know of the existence of its causes of action more than two or four years before it sued. Point three claims that the jury's answers to issues 19–22 are not supported by sufficient evidence or were against the great weight and preponderance of the evidence.

Appellant contends that it established, as a matter of law, that it did not have constructive notice of its cause of action earlier than two or four years before it filed suit. Appellant argues that the standards in issues 19–22 are incorrect, and that appellant must have been cognizant and aware of facts, rather than only in possession of information, before a duty to further investigate arose. Then appellant argues that the trust and its agents did not notice the

---

1. Repealed; currently TEX.CIV.PRAC. AND REMS.CODE §§ 16.003, 16.004 (Vernon 1986).

symbols on the maps which might have informed them of the well's deviation.

■ We find that issues 21 and 22, which are modelled on the Supreme Court's version of the test in *Champlin Oil & Refining Co. v. Chastain*, 403 S.W.2d 376, 405 (Tex.1965), apply the correct standard. Moreover, appellant has not established that no agents of the trust ever noticed the symbols. However, this was not its burden. The burden was on appellee to show that appellant was in possession of information which would cause a reasonably prudent landowner, similarly situated to appellant, to make inquiry, which inquiry, if pursued with ordinary diligence, would have disclosed its causes of action. The jury found for appellee on those issues. We overrule appellant's point two.

■ When considering an "insufficient evidence" point, we consider all of the evidence. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965); *Allied Finance Co. v. Garza*, 626 S.W.2d 120, 125 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); CALVERT, *No Evidence and Insufficient Evidence Points of Error*, 38 Tex.L.Rev. 361 (1960). We must sustain the jury's findings if some evidence of probative force supports them and they are not against the great weight and preponderance of the evidence. *Houston Lighting & Power Co. v. Sue*, 644 S.W.2d 835, 843 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.).

■ The parties introduced over 20 maps of the wellsite. Most of the maps, including some from the files of appellant and appellant's attorneys, show a dual location for the well, with the surface and bottom locations connected by a dotted line. Most of the maps showing the dual location of the well bear the letters "STH" by the depiction. Geologist Doyle Elich's testimony indicated that "STH" meant "slanthole" or "side-tracked hole." Fred Young, an oil and gas lawyer and former chief counsel for the Railroad Commission, testified to the necessity of reviewing maps to protect a client's interests, and that maps depicting a well in the manner that the well in this case was depicted would have led him to investigate. This evidence is sufficient to support the jury's findings on Special Issues 19–22. We overrule point three.

Appellant further urges us to apply the discovery rule to the accrual of its causes of action. However, under the discovery rule, limitations begin to run when one has information that would have led a person of ordinary prudence to a discovery of the facts. *Andretta v. West*, 415 S.W.2d 638, 642 (Tex.1967). The burden was on the appellant to obtain a finding that it did not have such information. The jury, by its answers to Special Issues 19–22, found otherwise. We overrule point one.

By point four, appellant claims to have established fraudulent concealment as a matter of law. Appellant had the burden to show that appellee knew the facts and had a duty to disclose them, but concealed them. *Weaver* at 793; *Owen v. King*, 111 S.W.2d 695, 697 (Tex.Comm'n App.1938, opinion adopted); *Nichols v. Smith*, 489 S.W.2d 719, 723 (Tex.Civ.App.—Fort Worth 1973, no writ). The jury's finding that Champlin's predecessors first learned of the bottomhole location of the well in May, 1948, is supported by the evidence that Champlin had a directional survey made at that time.

■ Appellant has complained of the difficulty, if not impossibility, of proving that no agent of appellee informed an appropriate representative of the opposing interest of the well's deviation. Its difficulty in ruling out the possibility is a result of the 40-year lapse during which potential witnesses died and records disappeared. Statutes of limitation are intended to compel the settlement of claims within a reasonable time after their origin and while the evidence remains fresh in the minds of witnesses. They protect the courts from stale claims and keep individuals from being put to defense after witnesses have disappeared and evidence is lost. Such statutes prevent fraud, perjury and mistake, though the operation of the statutes can be arbitrary and the result may be harsh. *Alvarado v. Gonzales*, 552 S.W.2d

539, 542 (Tex.Civ.App.—Corpus Christi 1977, no writ). Appellant failed to carry its burden. We overrule point four.

Having found sufficiently supported reasons to sustain the judgment, we decline to address appellant's remaining points. The judgment is AFFIRMED.